# DeRose, Admrx., Appellant, *v.* Metropolitan Life Insurance Company.

Argued May 5, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Louis L. Kaufman,* for appellant.

*D. C. Jennings,* for appellee.

OPINION BY CUNNINGHAM, J., July 15, 1938:

Plaintiff, as administratrix of the estate of her deceased husband, Nicholas DeRose, brought this action against the Metropolitan Life Insurance Company upon a policy of insurance covering the life of her husband, whose death occurred on August 2, 1934. A compulsory nonsuit was entered at the conclusion of plaintiff's testimony and she has appealed from the action of the court below refusing her motion to take off the nonsuit and to grant a new trial.

The policy was issued under date of December 25, 1933, in the face amount of $930. It also contained a provision for the payment of double indemnity "upon receipt of due proof that the insured ...... has sustained, after the date of this policy, bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes, in the death of the insured. ......" The material portions of another clause of the policy, pertinent to a review of the case, read: "No accidental death benefit will be paid if the death of the insured ...... is caused or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity."

Alleging that the death of the insured "resulted directly and independently from a collision between a street car and an automobile [in which he was a passenger] on June 25, 1934," appellant sued to recover $1860, with interest from August 2, 1934.

Our review of the record has satisfied us that the uncontradicted testimony elicited by the cross-examination of appellant and of the medical expert called by her, if properly admitted, conclusively defeated her right to recover even the face amount of the policy, and, of course, incidentally defeated any recovery under its double indemnity clause. But the appellee-insurer was not entitled to a judgment of nonsuit. Under the pleadings and all the evidence, appellant was entitled to a directed verdict in her favor, and judgment thereon, in the amount of $22.50, representing the premiums paid upon the policy. The entering of the nonsuit seems to have been the exclusive idea of the trial judge; counsel for the insurance company did not ask for a nonsuit and it was entered in the face of the express admission in the sixteenth paragraph of the affidavit of defense that the company was liable to appellant in that amount. It was also there averred that appellee had offered to return the premiums on November 26, 1934, but as ap-

pellant was not appointed administratrix until after suit had been brought it was "not liable for interest or costs." No tender, however, was made at the trial.

The record discloses this anomalous proceeding at the conclusion of the testimony. Counsel for the company moved the trial judge "to direct a verdict for the defendant" because the testimony of, and in behalf of, the plaintiff showed she was not entitled to recover on the policy. "By the Court (addressing counsel for the plaintiff) : Now we believe the motion must be granted, Mr. Kaufman. I do not think you have a prima facie case that can take you to the jury. The defendant's motion is granted. Note an exception to the plaintiff. *Dismiss the jury.*" (Italics supplied) The docket entry of this action by the trial judge reads: "On motion of attorney for the defendant judgment of compulsory nonsuit is granted." When the trial judge reached the conclusion that appellant was not entitled to recover the face of the policy, he should have directed the jury to return a verdict in her favor for only the amount of the premiums paid by, or on behalf of, the insured.

The fundamental and controlling issue in this case arose under the following provisions of the insurance contract:

"This policy constitutes the entire agreement between the company and the insured and the holder and owner hereof. . . . . . .

"If, (1) the insured is not alive or *is not in sound* health on the date hereof; or if (2) . . . . . . the insured has . . . . . . within two years before the date hereof, been *attended by a physician for any serious disease* or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or *disease of* the heart, liver or *kidneys,* unless such . . . . . . medical attention or previous disease is specifically recited in the 'Space for Endorsements' on page 4 in a waiver signed by the secretary; . . . . . . then, in any such case,

the company may declare this policy void and the *liability* of the company in the case of any such declaration or *in the case of any claim under this policy,* shall be limited to the return of premiums paid on the policy, except in the case of fraud, in which case all premiums will be forfeited to the company." (Italics supplied)

The company's proposition that its liability "was limited to the return of premiums" and its motion for a directed verdict were based upon its contention that it had shown by its counsel's cross-examination of appellant and of her medical expert, Dr. David L. Cooper, that the insured was not in "sound health" on the date its policy issued; that within two years before that date he had been attended frequently by Dr. Cooper for polycystic kidneys, a congenital and incurable disease of the kidneys; that he was suffering from that disease at the date of the policy; that he had a cerebral hemorrhage on May 30, 1934, (about one month prior to the automobile accident) which caused a partial paralysis and was probably due to a high blood pressure from which he had been suffering for several years; and that the cause of his death was another cerebral hemorrhage, unconnected with the "bodily injuries" suffered in the accident. The contention in behalf of appellant was that the objections of her counsel to the subject matter and extent of the cross-examination were improperly overruled by the trial judge.

Stated generally, the sole question involved upon the merits of this appeal is whether the trial judge erred in ruling that the matters developed in the cross-examination of appellant and her witness were germane to the subject matter of their direct examination and therefore within the proper scope of a cross-examination.

An understanding of the character and effect of the controlling provisions of the insurance contract sued upon is essential. The policy is of the industrial type,

requiring the payment of weekly premiums of seventy-five cents each. In issuing it the company waived both an application in writing from, and a medical examination of, the insured, relying for its protection, insofar as this case is concerned, upon the legal effect of the above quoted provisions.

In *Panopoulos v. Metropolitan L. Ins. Co.*, 96 Pa. Superior Ct. 325, the above quoted clause was held to be a "sound-health clause," and in *Connell v. Life Ins. Co.*, 16 Pa. Superior Ct. 520, 529, it was held that "whether the policy was void was dependent upon actual conditions, past or present, and not upon the knowledge of those conditions possessed by the parties." In that case the defense was the insured, prior to and at the time of the issuance of the policy, had Bright's disease of the kidneys, and that she continued to suffer from and died of that disease. It was there said, if this was true, the policy was void.

The same principle was announced by the Supreme Court in *Benzinger v. Prudential Insurance Co. of America*, 317 Pa. 561, 177 A. 922. A "sound-health clause," providing substantially that the policy shall not take effect if the insured be not in sound health on the date the policy issued, was held by us in *Youngblood, Adm. v. Prudential Insurance Co.*, 109 Pa. Superior Ct. 20, 25, 165 A. 666, to be "a condition and not a covenant." It was also remarked that "it operates more strongly in favor of the company than even a covenant in the policy that the answers to questions in the application shall be deemed warranties. It goes to the very heart or essence of the insurance contract." Where the company waives a health examination and any representation or warranty by the insured in an application it has the right to protect itself by incorporating such a condition into the contract.

With these principles in mind we turn to the evidence. It is also important to note that the primary issue at

the trial was whether the insured was, in fact, in sound health on the date of the policy. If he was not, the secondary issue—whether his death resulted solely from the accident—is of no importance. Appellee had the burden of showing he was not in sound health, and appellant had the burden of proof under the double indemnity clause. Naturally, the testimony could not be taken separately upon these issues, but the distinction has a bearing upon the question of appellant's right to go to the jury—the evidence being purely oral.

At the trial, appellant called two witnesses who testified to the fact of the accident on June 25, 1934, and to certain external injuries received by the insured. Appellant herself testified to the fact of her husband's death and as to his condition during the period intervening between the accident and the death. On cross-examination, she was asked whether her husband had been sick in bed in May of the same year and answered this question in the affirmative, after the trial judge had overruled an objection on the ground that it was not proper cross-examination. Further questions by counsel for the company brought out the facts that while appellant had not known what was wrong with her husband, he had been in bed about three days, had been attended by the family physician, Dr. Cooper, and had been unable to work for part of the month of June. Again over the objection of her counsel, she admitted her husband had been in a hospital in 1930 or 1931 and had been attended by Dr. Cooper and a member of the hospital staff.

Dr. Cooper testified he was called to examine the insured on the evening of the accident and found he had a swelling on the back of his head and was suffering from dizziness and nausea. He diagnosed the injury at the time as a concussion of the brain, and treated the insured up to the time of his death, which he testified was caused by a cerebral hemorrhage. He refused

to state definitely that in his opinion the hemorrhage was caused by the blow on the head but stated, in answer to a number of questions, that it was very difficult to say just what the cause of the hemorrhage was; that a blow on the head could cause a brain hemorrhage; that the question could not be answered without making certain supporting statements (not specifying what those statements were); but that a concussion of the brain might tear certain of the brain structures, which tearing in turn might cause a hemorrhage. It is doubtful whether the testimony of Dr. Cooper would have been sufficient, under the established rule, to take the question of causal connection between the accident and insured's death to the jury, but, under the conclusion we have reached upon the issue of sound health, it is not necessary to pass upon the question of the sufficiency of appellant's proofs of causal connection.

The cross-examination which followed is the pivotal point of the case. Dr. Cooper was first shown the proofs of death which he had signed. From this document (not offered in evidence but used to refresh his recollection) the witness stated he had attended the insured on May 30, 1934, at which time he had symptoms of a brain hemorrhage, resulting in a partial paralysis. The witness gave high blood pressure as the probable cause of the earlier hemorrhage and stated the deceased had been suffering from that complaint for several years. He was then asked whether the insured had ever had any trouble with his kidneys. In reply, the witness testified the insured first showed symptoms of a kidney disturbance in 1931, which was diagnosed, after an X-ray examination in a hospital, as polycystic kidneys, a congenital and incurable disease. He further stated that, with the assistance of a consultant, Dr. Simon, a diagnosis of a polycystic kidney condition was made in 1933 and, by a post-mortem examination, it was confirmed that the insured had the same condition at the

time of his death. The post-mortem examination was requested by Dr. Cooper himself to determine the correctness of his diagnosis.

The refusal of the trial judge to submit the case to the jury was evidently based upon the proposition that, although the question whether an insured was in sound health on a specified date is ordinarily a question of fact for a jury, the uncontradicted evidence of appellant and her own witness, Dr. Cooper, established that her husband was not in sound health when he procured the policy, and brought this case within the exception to the general rule: *Evans v. Penn Mutual L. Ins. Co.*, 322 Pa. 547, 557, 558, 560, 186 A. 133.

The uncontradicted evidence of Dr. Cooper showed conclusively that appellant, under the express conditions of the contract, was not entitled to recover anything in excess of the premiums which had been paid thereon, because her husband at the time it was issued had a "serious disease of the kidneys," and had been "attended by a physician" for that disease "within two years before" its date.

But, says counsel for appellant, the cross-examination as to any occurrence prior to the date of the accident on June 25, 1934, was improperly admitted, the direct examination having been confined to matters occurring on or after that date; and, moreover, the matters developed on cross-examination related solely to an affirmative defense which should have been developed by the company upon its own side of the case.

In our opinion, the trial judge did not abuse the discretion vested in him by permitting the cross-examination. The scope of cross-examination in this State has been so exhaustively reviewed by our Supreme Court in the recent case of *Conley et al. v. Mervis*, 324 Pa. 577, 188 A. 350, that it is unnecessary to look elsewhere for the controlling principles upon which our decision must rest. That case lays down two fundamental rules—

the first is that the decision as to the proper scope of cross-examination rests within the trial court's sound discretionary power, and its failure to properly limit it is not ground for reversal in the absence of apparent injury as a result of the error. The second rule is that "cross-examination may embrace any matter germane to the direct examination, qualifying or destroying it, or tending to develop facts which have been improperly suppressed or ignored by the plaintiff." Again, it was said (p. 586) : "That the testimony on direct examination does not go sufficiently far to prove the ultimate fact in issue is immaterial. It is enough if it tends to establish it. Where testimony has been adduced relevant to a particular issue involved, cross-examination may embrace any circumstances pertaining thereto, though prejudicial to plaintiff's case and reaching beyond the direct testimony."

We have already indicated the two issues involved at the trial. It may be conceded that the purpose of appellant's counsel in placing her, and particularly Dr. Cooper, on the stand, was only to establish the fact of death from an accident. Appellant, however, was not entitled to insist that the cross-examination be limited strictly to the precise matters covered by their testimony on direct examination. Under the rules laid down in *Conley v. Mervis,* supra, appellee was entitled to ask these witnesses any relevant questions pertaining to the *issues* concerning which they had been examined—not merely the specific matters as to which the strategy of counsel had confined their direct testimony. Otherwise, cross-examination would be of little value in bringing out the true facts of the case. Not only this, but neither can appellant complain if questions, relating to matters germane to the direct examination and relevant to a particular issue raised by her, incidentally established facts which were destructive of her case upon another issue.

An analysis of the testimony brings the problem into clear relief. Appellant's first move was to show the fact of the accident, the resulting external symptoms and immediate illness, followed some weeks later by death. The family doctor was placed upon the stand to testify as to his examination of the insured, his course of treatment and his diagnosis of the cause of death. While it is true that the doctor would not testify directly that the accident did cause the death, there is no doubt that the questions put to him were meant, if possible, to establish such a causal connection. It is clear that appellant sought to establish an inference that the blow on the head, resulting first in a concussion of the brain, was the direct cause of the cerebral hemorrhage from which the insured died.

As a matter of fact, however, it was developed that the insured less than one month before the accident and entirely independent thereof, had fallen ill and had shown symptoms of the very same disease which it was sought to ascribe solely to the accident. As appellee was not obligated to pay double indemnity unless the death resulted solely from the accident and was not contributed to in any way by disease, it was clearly proper for the trial judge to permit the appellee to bring out the fact that the insured had not only suffered from a disease a few weeks previously, but from the same disease which was given as the actual cause of death.

It is true that the cross-examination was not confined to prior attacks of cerebral hemorrhage. However, we are of opinion that the trial judge was justified in declining to draw such an artificial line. Once appellant undertook to adduce evidence bearing on the cause of death, the way was open to the company, upon cross-examination, to bring out every fact within the knowledge of the witness which had any bearing upon this issue. The problem was a scientific one which could be solved only by resort to expert medical testimony. An

intelligent understanding of that problem which would lead to a correct solution necessitated a thorough inquiry into the physical condition of the insured prior to the accident. Appellee was entitled to show, if it could, that the accident was not the sole cause of the death but that disease was, to some extent, a contributing factor.

We do not mean by this that counsel, under the guise of cross-examination, may ask irrelevant questions for the purpose of building up their own case. There may be instances, even in the case of medical testimony, where there can be no possible connection between the question asked and the ultimate fact to be proved. The decision upon such questions must, in the first instance, rest in the sound discretion of the trial judge, and we are not convinced that that discretion was abused in the case at bar. The only objection made was a general one to any evidence of facts occurring prior to the date of those covered by the direct examination. Therefore, in the absence of any showing that the testimony was irrelevant to the issue, we must assume that it was properly admitted. In fact, the testimony objected to actually developed the existence of a serious and incurable disease existing from birth. We think it was competent for appellee's counsel to bring out the fact of the presence of such a disease in connection with an inquiry into the ultimate cause of death.

When the evidence became admissible for that purpose, it became admissible for all purposes, and the court was required to give the facts produced their full legal significance, even though the result was one which went beyond anything appellant had in mind in presenting the direct testimony. A plaintiff cannot insist that relevant cross-examination be barred merely because it may tend to establish a fact which the defendant would otherwise have been called upon to prove. Having voluntarily opened an issue which involved

the cause of death, and necessarily included any diseases with which the insured was afflicted, appellant cannot complain because this led to the development of facts which bar her right to recover. Any other conclusion would make a trial a mere game and not a vehicle for bringing to light the true facts.

We are not impressed with appellant's argument that the result of the ruling of the lower court was to deprive her of an opportunity of meeting the question of disease existing at the date of the policy. In view of the averments of the affidavit of defense, she knew that the company intended to seek an avoidance of liability on this ground. She therefore must have been prepared to meet that issue, if it were possible to do so. If the testimony of Dr. Cooper was incorrect, or was a surprise to her, appellant had not only the right to examine him further on the point but also to produce other witnesses or records to contradict his testimony. She made no offer to produce such testimony, and there is nothing on the record to show it would not have been received, had request been made.

While we agree with the court below that appellant was not entitled to go to the jury, there are a number of erroneous statements of principles of law in the opinion supporting the action of the trial judge. They are attributable to a failure to distinguish between the questions involved upon the trial of cases upon industrial policies, issued without written applications or medical examinations, and the questions arising in suits upon policies issued either upon an application in writing or a medical examination or both. In this case the company relied upon the "sound-health clause" in its contract and not upon alleged false representations by the insured in applying for the policy or while being examined by the company's medical examiner. The knowledge, or lack thereof, of the insured with respect to his diseased condition, was not a factor in the case.

Nor was the question of estoppel, considered in *Prudential Insurance Company of America v. Kudoba et al.*, 323 Pa. 30, 186 A. 793, involved.

The judgment of nonsuit is vacated and the record remitted for further proceedings not inconsistent with this opinion.