## Satovich, Appellant, *v.* Lee.

Argued March 15, 1956. Before STERN, C. J., JONES, BELL, MUSMANNO and ARNOLD, JJ.

134

*Samuel J. Feigus,* with him *Robert Palkovitz,* for appellant.

*Herman M. Buck,* with him *Joseph W. Ray, Jr., David E. Cohen* and *Ray, Coldren & Buck,* for appellee.

OPINION PER CURIAM, April 25, 1956:
The judgment of the court below is affirmed on the opinion of Judge W. RUSSELL CARR, as reported in 5 D. & C. 2d 289.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:
When this Court affirms a judgment on the Opinion of a lower Court, it of course adopts the lower Court's Opinion as its own and is thus responsible for its reasoning, conclusions, and phraseology as much as if it had come from the collective pens of the Majority of the Supreme Court. I accordingly dissent from the Majority Opinion in this case because it contradicts what it has been saying for over a century (with the monotony of affirming the multiplication table), that in reviewing a record, where a nonsuit is involved, the testimony is to be read in the light most favorable to the plaintiff and that all reasonable inferences and conflicts in the testimony are to be resolved in his behalf. The Majority at least has the grace here not to quote

the rule which it has so signally ignored, for, in telling the story of the fatal accident of October 24, 1952, on Route No. 26169 in Fayette County, it has read the evidence in the light *least* favorable to the plaintiff and resolved all reasonable inferences *against* him.

The victim of the accident, Louis Satovich, upon whose death the instant lawsuit was predicated, was driving his car on his own side of the road at the modest speed of 25 miles per hour. At a point about 100 feet beyond a curve, which he negotiated without incident, he came into collision with another car. When the dust settled, Satovich was on the road to eternity. What happened? There were no qualified eye witnesses to the actual impact, but there were circumstances which spoke with the clarity, the definiteness, and the conclusiveness of a recording motion picture camera. Within a "split second" after the collision, a bus driver appeared on the scene. Another motorist arrived while the two opposing cars were still locked in their fatal embrace. These witnesses testified (1) that Satovich's car was on his own side of the road; (2) that the other car, which was owned and operated by the defendant, Fred E. Lee, extended a foot and a half over the center line of the highway and on Satovich's side of the road; (3) that the left front wheel of Lee's car rested on Satovich's side of the road; and (4) that the debris resulting from the collision—broken glass, spilled oil, water and alcohol, which had mixed with dirt and mud—was on Satovich's side of the road. If these undisputed facts were presented in any forum outside of a courtroom, the natural inference rising from them would be that the accident which killed Satovich occurred on Satovich's side of the road.

But the Majority argues that the accident happened on Lee's side of the road. Without any evidence whatsoever to support the supposition, the Majority says

that Satovich *may have* continued on a straight line as he entered the curve and thus moved over the center of the highway on to Lee's side of the highway. Of course, it is possible that Satovich may have done this. It is within the boundless realm of human (including judicial) imagination that Satovich may have done this and other things, but so far as the record is concerned the *only* evidence shows that Satovich *never* left his side of the highway. A truck driver, Ward Friend, testified that he followed Satovich for a mile and that at no time did Satovich cross the center of the roadway. Mr. Friend said further that when Satovich came to the curve in the road, he lost sight of him for a "split second" and then, in the following instant, came upon the accident—with Satovich still on his own side of the road. As against this positive testimony that Satovich adhered to his own lane on the highway, the Majority says he *may have* strayed over to the other lane.

Further proceeding on the stilts of hypothesis, instead of moving firmly over the rock-ballasted thoroughfare of facts, the Majority says that it was "not until after rebounding from the impact" that one wheel of Lee's car appeared across the center line. There is nothing in the record to show that the defendant's car rebounded. The Majority would seem to draw a picture of Satovich crossing over the center line to strike Lee on Lee's side of the road and then Lee (in anger and revenge?) bounding back over the center line to strike Satovich.

What is meant by "rebound"? If the Majority's language is to be interpreted literally, we then have a situation which in fact confirms the plaintiff's contention, namely, that the accident occurred on Satovich's side of the road. The definition of "rebound" is "to spring back on collision or impact with another

body." Thus, to spring back could only mean that Lee's car was over on Satovich's side of the road, that it was thrown back after hitting Satovich, and then, after the collision, sprang back (rebounded) to the Satovich side.

In any event, if, after reviewing the record, the Majority believes the accident happened on Lee's half of the highway, it still cannot, with any degree of respect for logic and our previous decisions, declare that the accident absolutely could *not* have happened on the Satovich side. This Court cannot affirm a nonsuit unless it is prepared to say that it is sheerly inconceivable that a reasoning and just mind could conclude that the accident happened on the Satovich portion of the road. But is that proposition inconceivable? The answer is that not only is it not inconceivable, but that in order to arrive at such a conclusion one would have to leave the highway of precedent, logic and cause-and-effect and pass over into the chaotic fields of arbitrary judgment.

The Majority treats Lee's trespassing over the center line of the highway by a foot and a half as a matter of slight insignificance. How far beyond the brink of a precipice does one need to proceed before he falls? A fraction of an inch over the verge and he is on his way to destruction. If a motorist drives his car only an inch over the white line and that inch's invasion causes a collision, he is liable for the consequences which follow. By travelling 18 inches over the line the defendant here affirmatively violated the provisions of the Motor Vehicle Code and if that violation was responsible for the accident, his liability for the resulting damages is inescapable. At any rate, a jury question is presented.

Shortly after the collision the defendant exclaimed: "I didn't see him coming." The Majority regards this

admission as inconsequential. I believe it to be tremendously consequential. A motorist has no more pressing duty than that of keeping his eyes on the road, and if his vision is directed to the road ahead of him he cannot help but see a car directly in his path. The collision between Satovich's car and Lee's car was head-on. If Satovich's car had collided with the side of Lee's car, Lee's admission that he did not see Satovich would not of itself have culpable significance, but since we know that the cars met nose to nose, Lee's statement is highly revelatory of his negligence. One of three things had to happen. Either (1) he saw Satovich and drove into him, or (2) he was driving with his eyes shut, or (3) he lied when he said that he did not see Satovich. In any of these possibilities he admits he was at fault. But the Majority sees nothing wrong in this glaring admission of a motorist's glaring defection.

A very proper and probable inference from all the evidence in the case is that Lee was travelling at a high rate of speed and in preparing to take the curve in the road he cut over to Satovich's side—and the collision occurred.

I regret to see this Court pass judgment for all time on an event which occurred within a split second, when the preceding and ensuing facts light up that instant with signs and portents that a jury is best equipped to understand and interpret.