James W. DAVIS, a Minor, by Sue G. Davis, his Guardian, and Sue G. Davis in her own right,

v.

Shaner C. HALDEMAN, Defendant and Third-Party Plaintiff, Ralph W. Smith, Administrator c.t.a. of the Estate of George Maslin Davis, Deceased, Third-Party Defendant.

James W. DAVIS, a Minor, by Sue G. Davis, his guardian, and Sue G. Davis in her own right

v.

Ralph W. SMITH, Administrator c.t.a. of the Estate of George Maslin Davis, Deceased, Defendant and Third-Party Plaintiff, Shaner C. Haldeman, Third-Party Defendant.

Civ. A. Nos. 16901, 16960.

United States District Court
E. D. Pennsylvania.

April 26, 1957.

See also, D.C., 126 F.Supp. 497.

William M. Alper (of Freedman, Landy & Lorry), Philadelphia, Pa., for James W. Davis, a Minor, etc.

John B. Hannum 3rd (of Pepper, Bodine, Frick, Scheetz & Hamilton), Philadelphia, Pa., for Ralph W. Smith, Administrator, etc.

John J. McDevitt 3rd, Philadelphia, Pa., for Shaner C. Haldeman.

VAN DUSEN, District Judge.

These cases come before the court on post-trial motions filed in these actions, arising out of a "head-on" collision between a truck and a car, after the trial judge's entry of a directed verdict for defendant in Civil Action No. 16,901 [1] and verdicts for the plaintiff and the third-party defendant in Civil Action No. 16,960.

## I. Plaintiff's Motion For a New Trial in Civil Action No. 16,901.

The only liability evidence consisted of the testimony of two state police officers, who arrived about 15 minutes after the occurrence of the accident at about 9 a. m. on a clear, June day, and pictures taken sometime after the arrival of police officers, as well as a stipulation that the truck driven by defendant was 7′ 11″ wide at its widest point (the rear of the truck) and that it carried a 27,000-pound load.

A sedan car occupied by the minor plaintiff was proceeding in a northerly direction along an 18′ 8″ wide road, with berms of 3′ 1½″ on each side, toward a curve to the right at the crest of the hill. Defendant was proceeding in his truck in a southerly direction up a grade toward the curve which was to his left at the crest of the hill. State police officers testified that a skidmark extended for a distance of 40′ 2″ from a point less than a foot east of the westernmost white line near the center [2] of the road in a westerly direction and then in a

---

1. The actions against both defendants were tried together (see footnote 13 below). This motion under Fed.Rules Civ. Proc. rule 50, 28 U.S.C. was made after the conclusion of the plaintiff's case and that of the administrator of the decedent, who was the driver of the car (N. T. 535, cf. 328–9, 338–40, 491, 498). Plaintiff contended strenuously that the case should be submitted to the jury. See letter dated 12/13/56, marked Exhibit C–2. However, the trial judge believes the proper course was to grant the motion, especially where substantial jury trial time was saved by such action. Defendant planned to call witnesses (N. T. 482, 501, 502 of 12/12/56), including the sole surviving eye witness (defendant himself). (Four witnesses testified for Mr. Haldeman at the second trial, which involved the liability of defendant as third-party defendant in Civil Action No. 16,960, and resulted in a verdict for the third-party defendant. Their testimony covers 44 pages of the notes of testimony—N. T. 160–204—even though only two counsel participated in that trial.) Such testimony would most likely have resulted in rebuttal testimony by plaintiff if it had been offered at the first trial. The cases cited in the above-mentioned letter are inapplicable for several reasons, particularly because they concern the direction of a verdict at the close of all the evidence, whereas this motion was granted prior to the production of any evidence by defendant.

2. The pictures show a broken white line parallel to and east of the solid white line, and the testimony was that the beginning of the skidmark was "between the solid white line and the broken dash line. It would be inches in between that area." (N. T. 153). There is no evidence to show where these lines were in relation to the exact center of the paved road.

southerly direction, ending up very near the westernmost berm of the road (P-1 and P-3). This skidmark indicated the route of the left, rear, double-tire wheel of the truck, which was far narrower at the cab than at the truck portion lcoated behind the cab. The pictures indicate clearly that the truck was well over on its right side (west side) of the road long before the area on the west side of the road where the debris from the truck and car was located (see P-1a).[3]

The trial judge found that no reasonable and well-balanced mind[4] could exclude the well-supported belief from the skidmark that the truck was on the west side of the road well before the point of collision, so that any negligence in the left rear wheel's having been on the right side of the road could not be a proximate cause of the accident.[5] This belief is at least as equally well-supported as the theory of defendant that the original position of the truck's left rear wheel at the beginning of the skidmark, inches to the east of the westernmost white line, was a proximate cause of the accident. See Flowers v. Dolan, 1944, 155 Pa.Super. 378, 38 A.2d 429, and Satovich v. Lee, 1956, 385 Pa. 133, 122 A.2d 212; cf. Bloom v. Bailey, 1928, 292 Pa. 348, 141 A. 150, 57 A.L.R. 585.[6]

The Pennsylvania Supreme Court has held that even though the defendant's car is on the wrong side of the road at the time of impact, this does not prevent the direction of a verdict for the defendant where the evidence does not disclose a lack of due care on the part of the defendant. See Richardson v. Patterson, 1951, 368 Pa. 495, 84 A.2d 342. A long line of Pennsylvania cases requires the conclusion that plaintiff has not satisfied the burden which rests upon him when he produces only circumstantial evidence of the type offered at this trial. See Richardson v. Patterson, supra, Satovich v. Lee, supra, and Kozemschak v. Garner, 1948, 163 Pa.Super. 328, 331, 61 A.2d 375.

---

3. The skidmark started at a point opposite or north of the "School Bus Stop" sign, which appears to be a considerable distance north of any of the debris. The west edge of the debris was 2′ 2″ from the west edge of the highway (N. T. 53). The inferences drawn by plaintiff from the location of the sand on the roadway are not justified, in view of the showing in P–1 that the rear right wheel of the truck went up on the bank to the west of the west berm of the road prior to the truck's coming to rest, thereby, in all probability, tilting the truck and throwing sand to the east over the road.

4. Under these circumstances, no reasonable and well-balanced mind could find that the evidence eliminated the probability that the sedan car's driving on the west side of the road and its driver's failure to apply the brakes (no skidmarks appeared behind his car) were the cause of the accident.

5. The Pennsylvania courts have consistently held that a jury may not be permitted to guess from circumstantial evidence which of several conditions, to which in equal fairness the collision may be attributable, occasioned the accident. See Slakoff v. Foulke, 1936, 323 Pa. 352, 358, 186 A. 79; Ebersole v. Beistline,

1951, 368 Pa. 12, 16–17, 82 A.2d 11. These courts also hold that there must be a proximate cause between the injury and the type of collision the motor vehicle provision violated was designed to avoid. Klimczak v. 7-Up Bottling Co. of Philadelphia, 1956, 385 Pa. 287, 293, 122 A.2d 707; Shakley v. Lee, 1951, 368 Pa. 476, 84 A.2d 322; Salvitti v. Throppe, 1942, 343 Pa. 642, 23 A.2d 445, 138 A.L.R. 842. The Restatement of Torts would apparently find there was no negligence, even if defendant was on the east side of the road at the start of the skidmark. See paragraphs (e) (f) and (ee) of Comment on Clause b of § 281.

6. Plaintiff states incorrectly at page 14 of his brief that "none of the liability witnesses were permitted to testify," whereas plaintiff's counsel had every opportunity to call the sole surviving eyewitness to the accident but chose to rely on the speculative, circumstantial evidence contained in the record of the first trial. It is noted that it was not brought out at this first trial that the defendant stated to the police officers that he first saw the car when it was 30 feet from his truck. This was brought out at the second trial, where the trial judge submitted the liability issue to the jury, who found for the defendant. (see pages 8 and 9 of this opinion).

Order in Civil Action No. 16,901.

And Now, April 26, 1957, It Is Ordered that plaintiff's motion for new trial filed December 19, 1956, is denied.

## II. Defendant's Motion for New Trial and Judgment N. O. V. in Civil Action No. 16,960.

There was sufficient evidence in this case for the jury to find that defendant's decedent came around the curve on the wrong side of the road [7] without looking for vehicles proceeding in a southerly direction toward him and crashed into Haldeman's truck without even applying his brakes. It is noted that in this case all the debris was on the western part of the road, whereas in Satovich v. Lee, 1956, 385 Pa. 133, 122 A.2d 212, relied on by defendant, the debris was "on both sides of the line" at page 213 of 122 A.2d. Under these circumstances, defendant's motion for judgment n. o. v. is denied. Cf. opinion filed 3/21/57 by Chief Judge Kirkpatrick in Spiegel v. Ferraro, D.C., 151 F.Supp. 281.

The trial judge has carefully considered the reasons in support of the motion for new trial, as stated in the motion and in defendant's able brief, but finds that they do not justify the grant of a new trial in this case.[8] The verdict is amply supported by the extensive and well-qualified testimony on damages carefully and clearly presented on plaintiff's behalf in this case.

In view of defendant's objection to the use of the blackboard by plaintiff's counsel in his closing speech to summarize the testimony concerning future loss of earnings, the trial judge had a picture taken of the blackboard on the day of its use and this picture is being attached to this opinion for consideration by the appellate court. The basic $5,000 annual loss of earnings figure used was supported by the evidence.[9] The trial judge emphasized to the jury that the jury had to determine whether they would accept this figure which was being used by counsel for plaintiff as part of his argument [10] and whether there would be a loss of future earnings (N. T. 609–12), using, inter alia, this language in the charge at page 612:

"* * * if you find that he can get through college and that he will make a good recovery, then you may find that there is no loss. That is entirely up to you."

The case of Warren Petroleum Corporation v. Pyeatt, Tex.Civ.App.1955, 275 S. W.2d 216, relied on by defendant, involved the use of material on a chart which had no basis in the evidence [11] and, hence, is distinguishable. The same Texas court has held that the blackboard may be used where the figures are based on "admitted testimony." See Kimbell

---

7. Such conduct is in violation of 75 P.S. § 521 (Pennsylvania Motor Vehicle Code, § 1004, as amended). See Buchanan v. Belusko, 1949, 361 Pa. 465, 467, 65 A.2d 386.

8. The able briefs of plaintiff and defendant have been placed in the file for the information of the appellate court. The authorities relied on by plaintiff support his contention that a new trial should not be granted.

9. See, for example, testimony of Mr. Forbes at N. T. 232–246.

10. The trial judge said to the jury at the time the $5,000 figure was written on the blackboard (N. T. 571):
"Now, whether or not you accept this $5000. figure is for you to decide on the basis of all the evidence. That is Mr.

Alper's estimate, and he is making an argument to you on the basis of the evidence, and I think that if all the evidence favorable to the plaintiff is believed, that is a proper figure, . Mr. Hannum; and, therefore, I rule that he may use it.
"Mr. Hannum: Very well, sir.
"The Court: But the jury understands that this is nothing binding on them, that they have got to decide what this loss of earnings is going to be, if they find the defendant is liable, but this is just Mr. Alper's argument."

11. The court said, 275 S.W.2d at page 218: "'the use of the charts * * * injected new and unsworn testimony for the jury's consideration.' * * * Most of the statements * * * were not * * * a reasonable deduction from the evidence."

v. Noel, Tex.Civ.App.1950, 228 S.W.2d 980, 983.

■■ The blackboard was removed from the view of the jury as soon as plaintiff's counsel had concluded his argument. If counsel intend to use a blackboard or chart, it is proper practice to require such counsel to present to the trial judge in chambers, or at sidebar, the exact material to be placed before the jury in this way so that any objections and rulings thereon can be made. Although this was not done in this case, defendant's counsel has made no showing that there was anything placed on the blackboard which was not based on uncontradicted evidence or that there was anything prejudicial put upon it, except the $225,000 figure which was marked with an "X" at the trial judge's suggestion.[12]

12. See N. T. 572–3, as follows:
 "The Court: Now, just before we pass on to that. Ladies and gentlemen of the jury, I want to make clear that you understand that that $225,000. figure has nothing to do with even what Mr. Alper is claiming, that this is a sum he would receive over a period. He wouldn't get it all now, so he is entitled to much less than multiplying the 5000 times 45. And when you multiply it times the factor—
 "Mr. Alper: That's right.
 "The Court: —that even if you accept Mr. Alper's argument, the figure is the one carried along there, $77,300.
 "Mr. Alper: I think, Your Honor, that is exactly what I did say.
 "The Court: Well, I know, but I want to make it clear, because that other figure is there.
 "Mr. Hannum: All right.
 "The Court: And I would suggest you erase the $225,000.
 "Mr. Alper: Supposing we X that out."

13. By order of November 7, 1956, as the result of plaintiff's motion, the third-party actions were severed and directed to be tried after the primary actions, in which the Dead Man's Act would not be applicable to prevent the testimony of Haldeman, the sole surviving eyewitness to the accident. No third-

■■

### III. Third-Party Plaintiff's Motion for New Trial in Civil Action No. 16,960.

This third-party claim was tried to a jury on the issue of liability, only, after the first trial.[13] The trial judge has carefully considered third-party plaintiff's reasons in support of his motion for a new trial and finds that the refusal of the motion would not be inconsistent with substantial justice.[14] Cf. F.R.Civ.P. 61.

### Order in Civil Action No. 16,960.

And Now, April 26, 1957, It Is Ordered that defendant's motion for new trial and judgment n. o. v. filed December 22, 1956, as supplemented by additional reasons filed March 25, 1957, and third-party plaintiff's motion for new trial filed March 20, 1957, are denied.

party action remained in Civil Action No. 16,901 after the first trial, due to the directed verdict for defendant. Since the third-party claim in Civil Action No. 16,960 would never have been submitted to the jury if the defendant (third-party plaintiff) had not been found liable, the trial judge became convinced that substantial compliance with state law (cf. Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 108–109, 65 S.Ct. 1464, 89 L.Ed. 2079) required that the jury hearing this third-party claim be informed of the negligence of defendant's decedent.

14. The scope of cross-examination of the police officers was not improper in view of the apparent inconsistency between this testimony and their report made shortly after the accident. See Bank v. Fordyce, 1848, 9 Pa. 275, 277; DeRose v. Metropolitan Life Insurance Co., 1938, 132 Pa.Super. 212, 221–222, 200 A. 888; Kline v. Kachmar, 1948, 360 Pa. 396, 61 A.2d 825. Ever since the Fordyce case, supra, the law in Pennsylvania (as there stated by Chief Justice Gibson) has been that "A party is entitled (on cross-examination) to bring out every circumstance relating to a fact which an adverse witness is called to prove."