Grady **LADSON**
v.
Frederick **FRITZ**
and
**Robert W. Shipley, Jr.**
Civ. A. No. 17519.

United States District Court
E. D. Pennsylvania.
April 30, 1957.

Martin Techner, Philadelphia, Pa., for plaintiff.

E. Walter Helm 3rd, Philadelphia, Pa., for defendant Fritz.

VAN DUSEN, District Judge.

This case involves post-trial motions filed after a jury returned a verdict in favor of one driver (Fritz) and against the other driver (Shipley), whose passenger was the plaintiff, of two automobiles which collided on a four-lane highway about two miles west of the Philadelphia International Airport. The cars were proceeding in opposite directions on the traffic lanes nearest a medial divider strip prior to the collision. The verdict of the jury makes clear that Fritz' testimony, that the Shipley car went over into Fritz' eastbound lane at a break in the divider strip and hit the Fritz car, was accepted by the jury.[1]

## I. Plaintiff's Motion for New Trial of His Claim Against Fritz

Plaintiff objects to the portion of the court's charge on circumstantial evidence and to the court's failure to comply with his request after the charge to instruct the jury that they should not indulge in arbitrary deductions from physical law and facts.[2]

1. Mr. Fritz' version was corroborated by the police report (N. T. 49) and the location of the debris (N. T. 37–8). The plaintiff testified that he first saw the Fritz car extending across the left, westbound lane in a north-south direction with its southerly, rear end in the break of the divider strip (N. T. 7–8).

2. Plaintiff's counsel said after the charge (N. T. 140):

   "I will except to your Honor's charge on circumstantial evidence, in that I submit Your Honor should have charged that under the facts in this case the jury should have been instructed that they should not indulge in arbitrary deductions from physical law and fact, except when they appear to be so clear and irrefutable that no room is left for the entertainment by reasonable minds of any other; that in this case both cars were so close to the center line that there can be nothing but conjecture with respect to their positions when they collided, and such other points as are cited in the case of Elmer Satovich, administrator of the estate of Louis Satovich, deceased, v. Fred E. Lee, Jr., cited in 122 Atlantic Reporter, Second Series—I do not have the book citation—212."

   The lower court opinion in Satovich v. Lee, 1956, 385 Pa. 133, 122 A.2d 212, at page 214, which was affirmed per curiam by the Pennsylvania Supreme Court, contains this paragraph:

   " * * * concerning the difficulty of reconstructing an accident merely from the positions of the vehicles thereafter, 'The study of accidents shows strange and inscrutable results, sometimes stranger than fiction'; in Spiro v. St. Louis Transit Co., 102 Mo.App. 250, 76 S.W. 684, 688, 'Freakish effects are sometimes caused by violent impacts of moving bodies'; in Lang v. Missouri Pacific R. Co., 115 Mo.App. 489, 91 S. W. 1012, 1013, 'So frequently do unlooked for results attend the meeting of interacting forces that *courts, in such cases, should not indulge in arbitrary deductions from physical law and fact, except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other.'* [Citing cases]. In Streilein v. Vogel, 363 Pa. 379, 69 A.2d 97, 100, our own Supreme Court had occasion to say very recently: 'The facts as to the positions taken by the automobiles on the highway following, and as a result of, the collision fall far short of being legally incontrovertible. That the sedan turned completely around and came to rest facing in the direction from which it had theretofore been travelling is of no conclusive significance. It is a matter of common knowledge that vehicles in motion, and especially ones under mechanical power, when suddenly and unexpectedly diverted from their course by a conflicting force, assume strange and ofttimes freakish positions.' " (Emphasis supplied.)

   The trial judge believed that counsel for plaintiff was referring to the above paragraph by the language quoted above, but counsel contends in paragraph 10 of his Motion for Charge that the trial judge should have realized he was referring to the next paragraph of the lower court's opinion in the above case, which concerns the location of debris. It is not inconsistent with substantial justice under Fed.Rules Civ.Proc. rule 61, 28 U.S.C. for a trial judge to fail to read an entire court opinion when this is first

The language contained in the lower court opinion in Satovich v. Lee, 1956, 385 Pa. 133, 122 A.2d 212, which is relied on by plaintiff, refers to a situation where the only evidence of the occurrence of the accident is circumstantial.[3] For example, the court used this language, 122 A.2d at page 215:

> "Proof of negligence may be furnished by the circumstances themselves and it is not essential to have eye-witness testimony, but where the circumstantial evidence is offered *because direct proof is not available* it must provide as the only reasonable inference the conclusion that the accident was caused by the negligence of the defendant. * * *
>
> " * * * negligence is not proved by circumstances that are merely consistent with its existence * * *." (Emphasis supplied.)

In this case, the jury had the benefit of the testimony of one driver and of a passenger (plaintiff) in the other car, so that much of the language of the Satovich case, supra, is inapplicable. Also, in this case, all the debris was two or three feet south from the center line in Mr. Fritz' eastbound lane of traffic (N.T. 38), whereas in the Satovich case, supra, the debris was "on both sides of the line", at page 213 of 122 A.2d. The charge emphasized that this debris, although three feet south of the center line, "was very close to the middle point of the highway." (N.T. 124.) When this language is read with the portion of the charge on circumstantial evidence,[4] the charge does not contain reversible error.[5]

■ Plaintiff's objection to the trial judge's reference to plaintiff's testimony on the position of the cars prior to the collision is also no ground for a new trial, particularly in view of the language of F.R.Civ.P. 61. Plaintiff's testimony seems clear to the trial judge that the Fritz car was "facing in a northwesterly direction" prior to the collision (N.T. 8).[6] Furthermore, this statement in the charge could not have prejudiced plaintiff for these reasons, among others:

(a) The trial judge emphasized in his charge on at least four occasions that it was the jury's memory of the testimony, not his, which controlled[7] and even that

requested at the conclusion of the charge.

3. Due to the Dead Man's Rule, there was no testimony in that case by any person who had seen the collision. The only two witnesses who testified stated what was seen immediately before and immediately after the accident, but neither saw the collision of the cars themselves. See Brief for Appellant and Record, pp. 17a, 28a, 33a; Satovich v. Lee, 1956, 385 Pa. 133, 122 A.2d 212.

4. N. T. 113–4.

5. The Pennsylvania courts have permitted inferences to be drawn from the location of debris. See Decker v. Kulesza, 1952, 369 Pa. 259, 262, 85 A.2d 413; Kozemchak v. Garner, 1948, 163 Pa.Super. 328, 331, 61 A.2d 375. In the Kozemchak case, an inference was permitted even though the debris was "mostly" on one side of the road, indicating that some of it was on the other side of the road; whereas in this case all the debris was on the south side of the road. Cf. opinion of Chief Judge

Kirkpatrick in Spiegel v. Ferraro, D.C., 151 F.Supp. 281.

6. Although the trial judge incorrectly referred to a portion of the plaintiff's testimony concerning the location of the cars after the impact, when counsel for plaintiff politely interrupted him during the charge on this point, the trial judge's statement that plaintiff testified that the Fritz car was heading north (N. T. 124) was correct (N. T. 8). Plaintiff contends that his testimony on cross-examination, that the left front of the Shipley car struck the left rear of the Fritz car, shows that the testimony on direct examination was a mistake (N. T. 26). However, his testimony during cross-examination would seem more likely to become confused than that on direct examination. A photograph taken immediately after the charge of the blackboard drawing used by the trial judge is being attached to this opinion for possible consideration by the appellate court.

7. N. T. 108–9, 112, 115, 144.

the court reporter might have made an error in transcribing the notes of testimony (N.T. 126).

(b) The trial judge emphasized (1) that his reference to this testimony was to point out the possible inaccuracies which can result when people are testifying to events which occurred several years before the trial,[8] and (2) that plaintiff's counsel believed his client's testimony was that the car was facing the other way.[9]

Under these circumstances, this motion will be denied.

## II. Defendant's Motion for Judgment on the Record

This motion must be granted since the Pennsylvania cases hold that the plaintiff is contributorily negligent as a matter of law.

██ The plaintiff, a licensed driver of motor vehicles (N.T. 22), testified that he was on the front seat beside Mr. Shipley as the latter drove, immediately prior to the collision, west past the airport in, or just after, rain (N.T. 23) for a distance of two miles at 30 or 35 miles an hour in very misty [10] weather which only permitted the headlights of the Shipley car to shine five or ten feet ahead (N.T. 29–30). He first saw the Fritz car when it was five or ten feet ahead of him (N.T. 28–9). The Pennsylvania appellate courts have consistently held that when danger arising out of the operation of a motor vehicle is manifest to a passenger, if he sits without protest and permits himself to be driven to his injury, his negligence in joining with the driver to test the manifest danger bars his recovery. See Hardie v. Barrett, 1917, 257 Pa. 42, 101 A. 75, L.R.A.1917F, 444; Little v. Four Wheel Drive Sales Co., 1935, 319 Pa. 409, 413–414, 179 A. 550; Ellenberger v. Kramer, 1936, 322

---

8. The trial judge said:

"Now, I just point this out to show you that in any situation like this, when the parties are talking about what happened five years before, they can easily become confused, and their testimony may be inaccurate, you see. This does not mean that the accident could not have happened to a parked car. All it does is to show that the testimony of the parties as to exactly what happened five years ago may be inaccurate; and you must consider that possibility, as I charged you, that the memory of the people isn't always good, or their perception isn't always good."

Again, this language appears at N. T. 128–9:

"The reason I am bringing this out to you now is just to show that I think that the fact that there may be difficulty in remembering things, that there may be difficulty in saying exactly how an accident happened, is extremely normal. And I think what you have got to do is to think of the probabilities, the likelihood of how the accident happened, and remember that it was five years ago, and that the memory of people as to exactly what happened, as to exactly the position of cars, is bound to be hazy.

"As you remember, the plaintiff admitted that he could only see 10 to 20 feet ahead; that he said at least three times that it was very misty. So that it would not be unreasonable to think that he could become confused as to which way the front of the car was as it loomed up there 10 to 20 feet ahead of him when the car was going 30 to 35 miles an hour. This does not mean that you cannot find that the car was not parked there. I am just using it as an example to show how difficult it is and would be to testify now as to exactly how things happened at that time."

9. The charge contains this language at N. T. 144:

"Now, it seemed to me as I heard the testimony and as I read that, that facing in a northwesterly direction meant it was facing with the front towards the righthand edge of the lane in which Mr. Shipley's car was proceeding. But I do not consider that that means that you cannot adopt the plaintiff's theory of the case. And my reading of it does not coincide with the plaintiff's reading. He thinks it does not mean that. He thinks he testified that the car was facing the other way, plaintiff's counsel. And all I am emphasizing to you is that just because there are some slight discrepancies in various things you should not, it seems to me, although it is your decision and not mine, throw out all the testimony of a witness. It is a long time ago, and it is hard to reconstruct today what happened five years ago."

10. Plaintiff used the term "very misty" twice (N. T. 23 and 29).

Pa. 589, 186 A. 809; Apfelbaum v. Markley, 1938, 134 Pa.Super. 392, 3 A.2d 975. In this case, plaintiff (a licensed driver) was certainly testing a manifest danger when he permitted himself to be driven at 30–35 miles per hour when the visibility ahead was only 10 to 20 feet. Since he permitted this negligent driving to continue for at least two miles, he clearly had an opportunity to tell Mr. Shipley to slow down or let him get out of the car.[11] Under these facts, such language as the following from the Apfelbaum case, supra, 134 Pa.Super. at pages 396–397, 3 A.2d at page 976, would seem controlling:

"Under the husband plaintiff's own admissions the accident did not occur in a sudden emergency but as a result of negligence which had continued for a considerable period. He did not complain of the defendant's fast driving when the danger was obvious to him; on the contrary, he willingly joined the driver in testing the danger. He is responsible for the consequences of his own act. 'The rule is well established that, when possible dangers, arising out of the negligent operation of a hired vehicle or a conveyance in which one is riding as an invited guest, are manifest to a passenger, who has any adequate opportunity to control the situation, if he sits by without protest and permits himself to be driven on to his injury, this is negligence which will bar recovery. In other words, the negligence of the driver is not imputed to the passenger, but the latter is fixed with his own negligence when he joins the former in testing manifest dangers [citing numerous cases]' * * *."

11. In ruling upon defendant's motion for a directed verdict made at the conclusion of the evidence (N. T. 87), the trial judge said to counsel in chambers (N. T. 93):
"* * * I have a grave question as to whether or not I should not direct a

### Order

And now, April 30, 1957, it is ordered that plaintiff's motion for new trial is denied and that the motion of defendant, Frederick Fritz, for judgment on the record is granted.

verdict for the defendant at this point. In view of the fact, however, that I have not had a chance to read every case on the point, I am going to submit it to the jury with appropriate instructions * * *."