J-S44031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ALFRED N. WHEELER AND NICOLE WHEELER, HIS WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MON VALLEY SPEED BOAT CLUB, INC., A PENNSYLVANIA BUSINESS CORPORATION | |
| Appellant | No. 107 WDA 2015 |

Appeal from the Order Entered December 18, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): AR-13-3504

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:          **FILED SEPTEMBER 30, 2015**

Mon Valley Speed Boat Club, Inc. (Boat Club/Club) appeals from the trial court's order entering judgment in the amount of $15,000 in favor of Appellees, Alfred N. Wheeler and Nicole Wheeler (the Wheelers).  After careful review, we affirm.

From 2009 to 2012, the Wheelers docked their 28-foot boat at the Boat Club's marina, located on the Monongahela River in McKeesport. When the Boat Club refused to return the Wheelers' property,[1]  the Wheelers filed the instant replevin action against the Boat Club seeking return of their

_____

[1] The contents of the boat ("property"), which according to the Wheelers included a CD player, coolers, life jackets, a tool box, fishing poles and a switch box, as well as the boat's trailer, were also located at the Boat Club.

property or, in the alternative, reimbursement for the value of their unreturned property. In their complaint, the Wheelers averred that "[o]n or before September 12, 2012, the[ir] boat was docked at the Marina . . . and [they] paid the dockage fees [and that] on or before April 23, 2013, [the Boat Club] took and unlawfully converted [their personal property] to its own use and benefit." Wheeler Complaint, 8/13/13, at ¶¶ 11-12. The Wheelers' complaint also sought punitive damages for the Boat Club's "willful and malicious acts." *Id.* at ¶ 16. The Wheelers attached a copy of the title and purchase agreement for the boat to their complaint. *See id.* at Exhibits "A" and "B."

On October 22, 2013, the Wheelers appeared before an arbitration panel; the Boat Club failed to appear. Ultimately, the panel entered an award in favor of the Wheelers in the amount of $35,000. On November 13, 2013, the Boat Club appealed the arbitration award.

On December 11, 2013, the Boat Club filed an answer and counterclaim to the Wheelers' complaint asserting that the Wheelers failed to pay dockage fees from the summer of 2009 until 2013, that $9,369 in unpaid fees were owed to the Boat Club, and that because of the outstanding dockage fees, the Boat Club had a lien on the Wheelers' boat and was entitled to maintain possession of it. Boat Club Answer/Counterclaim, 12/11/13, at ¶ 7. On January 3, 2014, the Wheelers filed preliminary objections stating that because the Boat Club failed to

attach any boat dockage contract, pursuant to Pa.R.C.P. 1019, its counterclaim should be dismissed.

On July 17, 2014, a non-jury trial was held in the matter. On July 18, 2014, the court entered a verdict, in the amount of $15,000, in favor of the Wheelers and against the Boat Club on its counterclaim. The Boat Club filed post-trial motions that were denied, after argument, by the trial court. This timely appeal followed.[2]

On appeal, the Boat Club presents the following issues for our consideration:

(1) Whether or not the trial court erred in not granting a new trial on granting a money judgment when the plaintiff was asking [for] replevin.

(2) Whether or not the court erred in not permitting Defendant to cross examine Alfred Wheeler on Nicole Wheeler[s'] deposition testimony.

(3) Whether or not the trial court erred in not granting a new trial after post trial evidence showed that the Plaintiffs lied under oath.

Historically,

Replevin is an action undertaken to regain possession of goods and chattels and to recover damages for their caption and detention, by the illegal act of the defendant. In order to maintain replevin, the plaintiff must have a general or special property right in the thing taken or detained. The common law view was that replevin lay only for goods wrongfully distrained,

---

[2] On February 19, 2015, judgment was entered on the verdict. **See** Pa.R.A.P. 905 (a)(5) (notice of appeal filed after announcement of determination but before entry of appealable order shall be treated as final after such entry and on day thereof).

which, of course, presupposed a prior possession by plaintiff. The modern rule is, however, that one may maintain replevin if he has the right of possession irrespective of whether or not he has ever had actual possession. In order to sustain replevin, it is incumbent on the plaintiff to show not only that he has title, but that he has also the right of immediate possession.

*International Electronics Co. v. N.S.T. Metal Products Co.*, 88 A.2d 40, 42-43 (Pa. 1952) (citations omitted).

While an action of replevin is founded upon a wrongful taking and detention of property and seeks to recover property in the possession of another, value of the property may be recovered where delivery of the specific property cannot be obtained. *Commonwealth ex rel. Anderson v. Fid. & Deposit Co.*, 811 A.2d 1040, 1042 (Pa. Super. 2002), citing *Valley Gypsum v. Pennsylvania State Police*, 581 A.2d 707, 710 (Pa. Cmwlth. 1990). Recovery of the value of the detained property is a secondary remedy in a replevin action. *Id. See also* Pa.R.C.P. 3170(b) (Judgment/Enforcement in Replevin Action) ("If judgment is entered for a party not in possession, **that party may obtain possession of the property by a writ of possession, or in the alternative may obtain the value of the property by execution on the judgment or by recovery upon the bond.**") (emphasis added).

Instantly, the Wheelers' complaint in replevin alternatively sought the value of their property with interest to the date of trial. *See* Wheeler Complaint, 8/1/13, at ¶ 18.b. The Wheelers estimated the market value of their property at $11,117.50 based on the purchase agreement attached to their complaint. Because the trial court found that the Wheelers' property

was technically unusable as a result of lack of maintenance ("winterizing") in inclement weather, it determined that monetary recovery was appropriate. We agree.

Here, the trial court was authorized to award the Wheelers a money judgment for the value of their property where: the Wheelers made a demand for reimbursement of the market value of their converted property in their complaint; Rule 3170 permits a money judgment in a replevin action; and, most importantly, the Wheelers could not have practicably recovered their property. *Cf.* ***Commonwealth ex rel. v. Fid. & Deposit Co.***, 811 A.2d 1040 (Pa. Super. 2002) (where trial court awarded appellees money judgment, a secondary remedy in replevin actions, case remanded to trial court to determine if primary remedy of recovering subject property was impracticable).

In its next issue on appeal, the Boat Club claims that the trial court erred when it did not permit counsel to cross-examine Alfred Wheeler on statements made by his wife, Nicole, in her deposition.[3] Specifically, counsel attempted to cross-examine Alfred with regard to statements that Nicole

---

[3] Although the Boat Club argues in its brief that the trial court erred when it did not permit counsel to cross-examine the Wheelers regarding the discrepancies *in each other's* deposition testimony, we have confined our review to the issue stated above which was preserved in post-trial motions. ***See*** Pa.R.A.P. 302(a).

made about whether the couple had a checking account during the relevant time that their boat was docked at the Boat Club.

It is well established that:

The decision as to the proper scope of cross-examination rests within the trial court's sound discretionary power, and its failure to properly limit it is not ground for reversal in the absence of apparent injury as a result of the error. The second rule is that "cross-examination may embrace any matter germane to the direct examination, qualifying or destroying it, or tending to develop facts which have been improperly suppressed or ignored by the plaintiff. . . . Where testimony has been adduced relevant to a particular issue involved, cross-examination may embrace any circumstances pertaining thereto, though prejudicial to plaintiff's case and reaching beyond the direct testimony.

*De Rose v. Metropolitan Life Ins. Co.*, 200 A. 888, 891-92 (Pa. Super. 1938) (citation omitted).

Here, counsel had the following exchange with Alfred Wheeler on cross-examination:

Q:    You were there when your wife testified, weren't you?

A:    Yes.

Q:    And you say that you didn't pay because you don't have a checking account?

A:    We didn't have a checking account.

Q:    But you[r] wife claims she did have a checking account in her deposition?

N.T. Non-Jury Trial, 7/17/14, at 118.  At this point in the line of questioning, the Wheelers' attorney objected on the basis of improper cross-examination. *Id.* at 119.  The court sustained the objection.  Counsel, however, continued

to question Alfred regarding whether, at the relevant time, the couple had a checking account and whether he knew if his wife had her own separate checking account. *Id.*

The Boat Club argues that pursuant to Pa.R.C.P. 4020, counsel should have been permitted to cross-examine Alfred regarding his wife's alleged inconsistent deposition testimony. We disagree.

Pursuant to Rule 4020, "[a]ny deposition may be used by any party for the purpose of contradicting or impeaching the testimony of a deponent as a witness, or as permitted by the Pennsylvania Rules of Evidence." Pa.R.C.P. 4020. Thus, the rule provides that Nicole's deposition could have been used to impeach *her own* testimony at trial or that Alfred's deposition could have been used to impeach *his testimony*; it does not permit Alfred to be cross-examined with Nicole's deposition testimony. Moreover, we find no abuse of discretion in the trial court sustaining the objection where the Boat Club could have pursued that line of questioning in the parties' depositions taken prior to trial, where the Boat Club failed to produce any record evidence to put the issue of payment of dockage fees from a checking account into play at trial, and where counsel further examined Alfred regarding the existence of a personal checking account. *De Rose*, *supra*.

Finally, the Boat Club argues that the trial court erred in not granting a new trial[4] when it produced post-trial evidence showing that the Wheelers lied under oath. Specifically, the Boat Club claims that a new trial is warranted because the Wheelers offered into evidence MoneyGram order stubs to show that they paid rent to the Boat Club, when in actuality those money orders were purchased to pay rent for a home occupied by the Wheelers in Elizabeth, PA, and rent for an apartment located in McKeesport.

> [A]fter-discovered evidence, to justify a new trial, must have been discovered after the trial, be such that it could not have been obtained at the trial by reasonable diligence, **must not** be cumulative or **merely impeach credibility**, and must be such as would likely compel a different result. A court should not grant a new trial based on after-discovered evidence unless the proponent can convincingly show that he was unable to obtain such testimony for the trial by use of reasonable diligence.

*Claudio v. Dean Mach. Co.*, 831 A.2d 140, 146 (Pa. 2003) (citations omitted).

On the day of trial, the Wheelers introduced three MoneyGram order stubs as proof of rental payments made to the Boat Club on July 12, 2011, July 20, 2011, and December 7, 2012. Handwritten on those receipts were the words "Boat Club." Alfred Wheeler testified that these money orders

---

[4] Our standard of review of the grant or denial of a motion for a new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law that controlled the outcome of the case. *Stevenson v. Gen. Motors Corp.*, 521 A.2d 413, 422 (Pa. 1987).

were used to pay dockage fees for their boat at the Boat Club, N.T. Non-Jury Trial, 7/17/14, at 28-32, and that the handwritten notations on the money order receipts were made to distinguish the dockage payments from payments they made for their mortgage and gas. *Id.* at 32. Post-trial, Boat Club counsel investigated the origin of these money orders using their tracking numbers.[5] The investigation revealed that the money orders were actually used to pay rent for real property, a house and an apartment, and not for fees for the Wheelers' boat docked at the Boat Club.

Instantly, the Boat Club argues that it is entitled to a new trial because the post-trial discovery that the money orders were not, in fact, used to pay the dockage fees constitutes "a fraud on both this Honorable Court and the defense . . . [where] the Court relied on the truthfulness of Mr. and Mrs. Wheeler; but, in fact, they lied under oath and perjured themselves about the origins and uses of these money orders." Appellant's Brief, at 12. In essence, the Boat Club wants to use the after-discovered evidence to impeach the Wheelers' credibility, especially in light of the fact that the trial court placed little to no weight on the defense witnesses' testimony, finding several of its witnesses not credible, unable to recall events, and, simply, unconvincing. Because a new trial is not warranted where after-discovered

_____

[5]   Tracking numbers 203350028596, 203887895431, and 20292801404.

evidence is being used to solely impeach the credibility of a witness, **Claudio**, **supra**, the Boat Club is not entitled to relief on this claim.[6]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2015

_____

[6] Moreover, because there was evidence, presented by both the Wheelers and the Boat Club, that the Wheelers did pay *some* dockage fees while their boat was docked at the Boat Club, the after-discovered evidence would not likely result in a new verdict if a new trial were granted. **Padillas**, **supra**.